**IN THE UNITED STATES DISTRICT COURT FOR THE
<u>MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION</u>**

JOSEFA QUINONES, INDIVIDUALLY AND
A/A/O OF WALESKA QUINONES-PEREZ, LUIS
QUINONES, AND JULIO C. QUINONES, III; JESSICA
MARTINEZ, INDIVIDUALLY, AS A
MEMBER OF THE SUCESIÓN OF JULIO
QUINONES-MARTINEZ, AND AS THE ANTICIPATED
PERSONAL REPRESENTATIVE OF THE ESTATE OF
JULIO QUINONES-MARTINEZ; JUAN QUINONES,
INDIVIDUALLY AND AS A MEMBER OF
THE SUCESIÓN OF JULIO QUINONES-MARTINEZ;
AND ALEXA QUINONES, INDIVIDUALLY
AND AS A MEMBER OF THE SUCESIÓN OF
JULIO QUINONES-MARTINEZ,

    Plaintiffs,

    vs.                                        CASE NO:

THE UNITED STATES OF AMERICA.

    Defendant.
_____/

## **COMPLAINT**

Plaintiffs, Josefa Quinones, individually and as assignee of Waleska Quinones-Perez, Luis Quinones, and Julio C. Quinones, III; Jessica Martinez, individually, as a member of the sucesión of Julio Quinones-Martinez (the decedent shall be referred to herein as "Mr. Quinones-Martinez"), and as the anticipated personal representative of the estate of Mr. Quinones-Martinez; Juan Quinones, individually and as a member of the sucesión of Mr. Quinones-Martinez; and Alexa Quinones, individually and as a member of the sucesión of Mr. Quinones-Martinez sue Defendant, the United States of America (hereinafter the "United States"), and state:

## GENERAL ALLEGATIONS

1. This is an action brought under the Federal Tort Claims Act for a wrongful death arising out of the negligent and wrongful acts or omissions of employees, agents, and/or representatives of the United States while acting within the course and scope of their employment, agency, servitude, or representative capacity, under circumstances where the United States, if a private person, would be liable to the Plaintiffs. 28 U.S.C. §1346(b); 28 U.S.C. §2674.

2. At all times material hereto, the persons alleged herein to be negligent, were subject to the United States' right of control.

3. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1346 and 28 U.S.C. §2674.

4. On March 11, 2013, the Plaintiffs filed an administrative claim with the Department of Veteran's Affairs for damages arising out of the death of Mr. Quinones-Martinez based on the negligence of United States and its employees and agents practicing in the course and scope of their agency under the right of control of the United States. Copies of these administrative claims are attached hereto as **Composite Exhibit A**.[1]

5. These administrative claims were presented to the Department of Veteran's Affairs as required by 28 U.S.C. §2675.

6. The Department of Veteran's Affairs finally denied Plaintiffs' claims on or about September 11, 2013. A copy of the Department of Veterans Affairs' final denial letter is attached hereto as **Exhibit B**.

---

[1] The exhibits to the SF-95s have been omitted.

7. Plaintiffs are all citizens of the United States of America and all of them reside in Hillsborough County, Florida. Accordingly, venue is proper in the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. 1402(b).

8. At all times material hereto, Josefa Quinones was the spouse of the decedent Mr. Quinones-Martinez.

9. At all times material hereto Mr. Quinones-Martinez had six children, Plaintiff Jessica Martinez, Plaintiff Juan Quinones, Plaintiff Alexa Quinones, Waleska Quinones-Perez, Luis Quinones, and Julio C. Quinones, III.

10. Before filing an administrative claim, Waleska Quinones-Perez, Luis Quinones, and Julio C. Quinones, III assigned any claims that they had as a member of the sucesión of Mr. Quinones-Martinez to Plaintiff Josefa Quinones.[2] Copies of these assignments are attached hereto as **Exhibit C**. As a result, all members of the sucesión of Mr. Quinones-Martinez filed administrative claims with the Department of Veteran's Affairs and all members of the sucesión of Mr. Quinones-Martinez are represented in this lawsuit.

11. The undersigned attorney hereby certifies that a reasonable investigation has been made and that such reasonable investigation has given rise to a good faith belief that grounds exist for a claim of medical negligence against the United States.

---

[2] A sucesión in Puerto Rico is the "'transmission of rights and obligations of a deceased person to his heirs…The inheritance includes all of the property, rights, and obligations of a person which are not extinguished by his [or her] death… and is transmitted… from the moment of his [or her] death.'" Cruz-Gascot v. Hima-San Pablo Hospital Bayamon, 728 F.Supp.2d 14, 19 (D.P.R. 2010). This inheritance includes the "…original victim's right to claim for serious damages resulting from pain and suffering before his or her death." Id. at 23. "A sucesión 'is not an entity distinct and separate from the persons composing it…' and it 'does not have an existence by itself as a juridical person or entity on behalf of which a lawsuit can be brought.'" Id. (citing Ruiz-Hance v. Puerto Rico Aqueduct, 596 F.Supp.2d 223, 229 (D.P.R. 2009)).

12. All conditions precedents to the bringing of this action have occurred, have been waived, or have otherwise been fulfilled.

## THE NEGLIGENT MEDICAL CARE AND TREATMENT

13. On or about, September 15, 2011, the decedent, Mr. Quinones-Martinez was taken by ambulance from the Ponce Outpatient Clinic to the emergency department of the San Juan, Puerto Rico V.A. Medical Center/Hospital located at 10 Casia Street, San Juan, Puerto Rico 00921-3201 (hereinafter "V.A. Medical Center").

14. Upon arrival at the V.A. Medical Center, Mr. Quinones-Martinez was found to have anemia, dizziness, and weakness. He had been having dark stools over the past week and was found to have blood in his feces. His admitting physician's diagnostic impression was that Mr. Quinones-Martinez had upper GI bleeding.

15. Shortly after arriving at the V.A. Medical Center he was admitted to the MICU.

16. A chest x-ray taken on September 15, 2011 was normal. His labs on September 15, 2011 showed normal white blood cell counts and his physical examination showed no signs of an infection.

17. On September 16, 2011 at 15:52 an upper gastrointestinal tract endoscopy was performed and was found to be normal. A colonoscopy was scheduled for Monday, September 19, 2011 to rule out bleeding in his lower GI tract.

18. On September 17, 2011 at 10:23, Mr. Quinones-Martinez was transferred out of the MICU and to the VA Medical Center's main ward because he had "no signs of active bleeding."

19. On September 19, 2011, Mr. Quinones-Martinez had a colonoscopy performed. Immediately after the colonoscopy, Mr. Quinones-Martinez had a distended abdomen and pain at a 10/10 level. An x-ray of his abdomen showed that during the colonoscopy his colon was likely perforated. Surgery was immediately scheduled.

20. At 16:15 on September 19, 2011 an exploratory laparotomy with right hemicolectomy and side to side anastomosis was performed in order to repair the tear in Mr. Quinones-Martinez's colon. During the procedure, it was noted that Mr. Quinones-Martinez had mild peritonitis due to "fecal spillage." Contamination was found in the area of the perforation.

21. After this surgical procedure, Mr. Quinones-Martinez was transferred to the ICU.

22. He was treated with antibiotics after this procedure, but it is unclear from his medical records for how long he received antibiotics. However, the last notation that antibiotics were administered after the September 19, 2011 surgery was on September 21, 2011 at 06:02. No blood cultures were taken before or after the surgery or prior to administering these antibiotics.

23. On September 21, 2011, *two days after his surgery*, at 23:00, his white blood cell count was significantly elevated to a 14.4. No cultures were taken at this time and no further antibiotics were administered.

24. On September 22, 2011, Mr. Quinones-Martinez's white blood cell count was still elevated at 14.3. In the early morning, his pulse was 91 to 105 beats per minute and his respiratory rate was 14-20 breaths per minute. No cultures were taken at this time and no

further antibiotics were administered.

25. On September 23, 2011, Mr. Quinones-Martinez was found to have a depressed mood and early in the morning he had a rapid heart rate of 115-120 beats per minute. Later in the day at 18:00, his heart rate went up to 154 beats per minute and his respiratory rate was also rapid at 34 breaths per minute. Additionally, his white blood cell count was further elevated to a 16.7 at 16:15 and 17.0 at 23:45. He was found to have a crackling sound in his lungs and a chest x-ray taken at 16:24 showed, when compared with his prior chest x-rays, that there had been interval development of densities in his lungs and that he had low lung volume. Mr. Quinones-Martinez was also found to have blood sugar levels of 149 mg/dl and 158 mg/dl and insulin was administered. Mr. Quinones-Martinez was not a diabetic. No cultures were taken at this time and no antibiotics were administered.

26. On September 24, 2011, at 08:09 Mr. Quinones-Martinez's cardiologist stated that in the next 24 hours if Mr. Quinones-Martinez had "…worsening SIRS manifestation" that his health care providers "may need to consider empiric antibiotherapy and evaluation for infectious process…."

27. At 09:16, Mr. Quinones-Martinez had "ineffective breathing" and he was put on an oxygen mask.

28. At 11:39, his gastroenterology physician noted in his chart that Mr. Quinones-Martinez's medical providers should "closely follow" him for signs of an infectious process.

29. At 13:02, his cardiologist amended the 8:09 entry in his chart and stated that because Mr. Quinones-Martinez had a mechanical valve in his heart that it was "highly recommended" that he have an "aggressive work up" to rule out an infection. His

cardiologist recommended that he have blood cultures, a complete blood count, an abdominal CT, chest x-ray, and that his physicians should consider starting him on broad spectrum antibiotics.

30. Nevertheless, blood cultures were not taken and broad spectrum antibiotics were not administered. Also, a complete blood count test was not taken on September 24, 2011.

31. From September 24, 2011 at 11:39 to September 25, 2011 at 07:01, Mr. Quinones-Martinez was not seen by a medical doctor, despite the recommendation that he be closely followed. During this time the nursing notes in his medical records are also incomplete. There are limited vital signs charted which would assist in determining whether Mr. Quinones-Martinez's condition changed in any way during this period of time. Furthermore, there were two orders/protocols in effect during this time, both of which are charted in the nursing note dated September 24. The first was dated September 24 at 20:00 to "CONTINUE WITH VITAL SIGNS AND CBG EVERY FOUR HOURS." The second was an order/protocol to "…CONTINUE WITH CLOSE MONITORING AND VITAL SIGNS EVERY HOUR AS PROTOCOL." Despite these orders, during this period of time, Mr. Quinones-Martinez's vitals were either not checked per the protocols/orders or were not charted.

32. On September 25, 2011 at 00:31, Mr. Quinones-Martinez's white blood cell count was elevated to a 9.9 and his bands level, for the first time, was elevated well above normal to 24%.

33. These findings were reviewed by Mr. Quinones-Martinez's gastroenterologist at 07:01 on September 25, 2011. His physician notes that he has "significant bandemia."

34. Nevertheless, his physician's recommendations were to *consider* administering empiric antibiotic therapy and to also *consider* ordering an abdominal CT scan, for evaluation of possible infectious process associated to his recent surgery.

35. His physician did not order an abdominal CT scan, did not order blood cultures to start the process of administering empiric antibiotics, and did not begin Mr. Quinones-Martinez on broad spectrum antibiotics.

36. Mr. Quinones-Martinez's condition deteriorated throughout the day on September 25, 2011.

37. A cbc reading on September 25, 2011 at 15:07 showed his bands level to have increased 2.5 times to 61% and his white blood cell count to have dropped to 3.9.

38. At 17:34 on September 25, 2011, Mr. Quinones-Martinez reported to his medical providers that he was not feeling well.

39. A surgical consult found that Mr. Quinones-Martinez had rapid respirations of 25-30 breaths per minute, his heart was racing at 130 beats per minute, and he also had hypoxemia. Despite these findings, cultures were not ordered at this time and antibiotic was not administered.

40. It was not until an hour later (at the very earliest) at 18:30 when Mr. Quinones-Martinez was found to have a fever and a green drainage coming out of a tube inserted in his nose that his medical providers decided to put him on antibiotics.[3]

Unfortunately, blood cultures were still not ordered at this time.

41. It was not until September 26, 2011 at 04:45, over ten hours later, that blood cultures were ordered. There was no indication that the culture should be run STAT or that the results should be returned as quickly as possible.

42. Unfortunately, Mr. Quinones-Martinez died eleven hours later at 16:00 on September 26, 2011, before the results of the cultures came back.

43. On September 28, 2011, an autopsy was performed by Dr. Elsie M. Diez at the VA hospital.

44. The autopsy showed that Mr. Quinones-Martinez died from a severe infection which caused him to go into septic shock and also showed that he had an associated acute necrotizing bronchopneumonia. The cultures which were returned after his death showed that Mr. Quinones-Martinez's infection was from bacteria called *pseudomonas fluorescens/putida* which were resistant to the type of antibiotics that his medical providers administered to him on September 19, 2011 and September 25, 2011.

## COUNT I - 
## NEGLIGENCE AGAINST THE UNITED STATES
## FOR ITS VICARIOUS LIABILITY FOR THE CONDUCT OF
## MR. QUINONES MARTINEZ'S MEDICAL PROVIDERS

45. Plaintiffs reallege and incorporate paragraphs 1 through 44 herein.

---

[3] The nursing note from this day culminates several nursing notes; the "date of note" is September 25, 2011 18:30 and its "entry date" is listed as September 25, 2011 at 20:37.

46. At all times material hereto, the United States was responsible for operating the V.A. Medical Center and held itself out as an institution properly skilled in the care and treatment of persons such as Mr. Quinones-Martinez and properly staffed to offer competent medical, nursing and surgical care and treatment to persons such as Mr. Quinones-Martinez.

47. At all times material hereto, the United States entered into employment, agency, and other types of relationships with physicians, nurses, and other hospital personnel to staff its various departments to provide services to its patients.

48. In its operation of the V.A. Medical Center, the Unites States has certain rules regulations, policies, procedures, protocols and standing orders that establish certain standards, govern certain practices, and require certain conduct by the physicians, medical, surgical, and nursing personnel in their care and treatment of patients at the V.A. Medical Center.

49. Mr. Quinones-Martinez came under the care of the United States on or before September 15, 2011.

50. The United States, by and through its employees, agents, and/or representatives was under a duty to exercise such skill, care, and diligence that is recognized as acceptable and appropriate by reasonable and prudent similar health care providers.

51. The United States is responsible for the conduct of employees, agents, representatives, physicians, nurses, and other medical providers who provided care to Mr. Quinones-Martinez from September 15, 2011 to his death on September 26, 2011, including, but not limited to, Dr. Norma Santiago-Rivera, Dr. Carlos Ortiz-Ortiz, Dr. Priscilla Magno-Pagatzaurturidua, Dr. Javier Acevedo-Gonzalez, Dr. Luis Rodriguez-Ospina, Dr. Carlos M.

Perez- Ruiz, Dr. Mariluz Rivera-Hernandez, Dr. Nicole M. Grigg, Dr. Jose Martin-Ortiz, Dr. Emanuel Warrington-Colon, Roberto Moura-Henriquez, R.N., Mitchell Colon, R.N., and Maria C. Carrion-Ramos, R.N.

52. The United States by and through its employees, agents, representatives, physicians, nurses, and other medical providers who provided care to Mr. Quinones-Martinez from September 15, 2011 to his death on September 26, 2011 undertook to provide medical services to Mr. Quinones-Martinez and owed Mr. Quinones-Martinez a duty to perform such services with the care, skill, and diligence that in light of all relevant surrounding circumstances, is considered acceptable and appropriate by reasonably prudent similar health care providers in the same or similar communities.

53. Notwithstanding these duties, the United States deviated from the prevailing professional standard of care and breached the duties owed to Mr. Quinones-Martinez thorough the actions, inactions, errors, and omissions of its employees, agents, representatives, physicians, nurses, and other medical providers who provided care to Mr. Quinones-Martinez from September 15, 2011 to his death on September 26, 2011 by, including, but not limited to, the following:

(a) failing to take cultures of Mr. Quinones-Martinez's peritoneal cavity at the time of his emergency exploration and laparotomy on September 19, 2011;

(b) failing to take cultures of Mr. Quinones-Martinez prior to administering antibiotic on September 19, 2011;

(c) failing to detect the presence of an ongoing infectious process from September 21, 2011 until September 25, 2011;

(d) failing to order blood cultures when Mr. Quinones-Martinez showed the signs and symptoms of an infection;

(e) failing to order broad spectrum antibiotics when Mr. Quinones-Martinez showed the signs and symptoms of an infection;

(f) failing to treat Mr. Quinones-Martinez with the proper antibiotics;

(g) failing to consult with a physician who specializes in treating infectious diseases;

(h) failing to communicate Mr. Quinones-Martinez's condition and changes in his condition with his other health care providers;

(i) failing to coordinate the plan of care for Mr. Quinones-Martinez;

(j) failing to perform appropriate physical examinations or diagnostic tests, or to order that such examinations or tests be performed;

(k) failing to note the importance of Mr. Quinones-Martinez's abnormal vital signs, changes in his vital signs, and failing to do anything about them;

(l) failing to follow appropriate guidelines concerning care and monitoring of a person at greater risk of being injured as a result of an infection;

(m) failing to appreciate the seriousness of Mr. Quinones-Martinez's condition;

(n) failing to invoke the chain of command to secure appropriate, safe, and reasonable medical care for Mr. Quinones-Martinez so as to prevent and treat Mr. Quinones-Martinez's infection which led to his death;

(o) failing to timely and accurately chart entries in Mr. Quinones-Martinez's chart;

    (p)    failing to appropriately chart Mr. Quinones-Martinez's vital signs, the results of medical tests performed on Mr. Quinones-Martinez, and drugs administered to Mr. Quinones-Martinez;

    (q)    failing to maintain a complete medical record of Mr. Quinones-Martinez's medical care and treatment; and

    (r)    failing to adhere to the rules, regulations, policies, procedures, protocols or standing orders applicable at the V.A. Medical Center.

54.    As a direct and proximate result of the United States' actions, inactions, errors, and omissions, by and through its employees, agents, and/or representatives:

    (a)    Mr. Quinones-Martinez suffered bodily injury, resulting conscious pain and suffering, and ultimately he died;

    (b)    Josefa Quinones has and will suffer mental anguish, pain and suffering, a loss of consortium, a loss of companionship, protection, comfort, and society. She has and will continue to suffer a loss of her husband's support and services. These losses were suffered in the past, are ongoing, permanent, and she will suffer these losses in the future. Josefa Quinones has also suffered economic damages, which include, but are not limited to, the funeral expenses associated with Mr. Quinones-Martinez's funeral;

    (c)    Alexa Quinones has and will suffer mental anguish, pain and suffering, a loss of parental companionship, instruction, and guidance as a result of the death of her father. She has and will continue to suffer a loss of her father's support and services. These losses were suffered in the past, are ongoing, permanent,

and she will suffer these losses in the future;

(d) Jessica Martinez has and will suffer mental anguish, pain and suffering, a loss of parental companionship, instruction, and guidance as a result of the death of her father. These losses were suffered in the past, are ongoing, permanent, and she will suffer these losses in the future;

(e) Juan Quinones has and will suffer mental anguish, pain and suffering, a loss of parental companionship, instruction, and guidance as a result of the death of his father. These losses were suffered in the past, are ongoing, permanent, and he will suffer these losses in the future; and

(f) The members of Mr. Quinones-Martinez's suscesión and Josefa Quinones have suffered a loss of net accumulations which would have been inherited had Mr. Quinones-Martinez lived.

WHEREFORE, Plaintiffs demand judgment against the United States for damages, plus interest and costs, and such other relief as this Court deems just and proper.

### COUNT II - 
### NEGLIGENCE AGAINST THE UNITED STATES FOR ITS VICARIOUS LIABILITY FOR THE FAILURE TO ADHERE TO INDUSTRY STANDARDS AND FAILING TO CREDENTIAL, TRAIN, AND SUPERVISE MEDICAL PROVIDERS

55. Plaintiffs reallege and incorporate paragraphs 1 through 44 herein.

56. At all times material hereto, the United States was responsible for operating the V.A. Medical Center and held itself out as an institution properly skilled in the care and treatment of persons such as Mr. Quinones-Martinez and properly staffed to offer competent medical, nursing and surgical care and treatment to persons such as Mr. Quinones-Martinez.

57. In its operation of the V.A. Medical Center, the Unites States has certain rules regulations, policies, procedures, protocols and standing orders that establish certain standards, govern certain practices, and require certain conduct by the physicians, medical, surgical, and nursing personnel in their care and treatment of patients at the V.A. Medical Center.

58. Mr. Quinones-Martinez came under the care of the United States on or before September 15, 2011.

59. The United States owed Mr. Quinones-Martinez a duty to ensure that the medical staff and health care providers providing him care and treatment were credentialed, trained, and properly supervised.

60. The United States also owed Mr. Quinones-Martinez a duty to ensure that the policies, procedures, protocols, and standing orders that were in place at the V.A. Medical Center complied with industry and national standards and the standards that the United States has agreed to adhere to, including, but not limited to, Joint Commission standards.

61. The United States was careless and negligent by and through its agents, employees, servants, and representatives in, including, but not limited to, the following respects:

    (a) failing to have policies, procedures, protocols and standing orders that comply with industry and national standards and standards that the United States has agreed to adhere to, including, but not limited to, Joint Commission standards;

    (b) failing to adequately train and orient its agents, apparent agents, employees, servants, representatives, resident physicians, nurses and/or other health care

providers, including, but not limited to Dr. Norma Santiago-Rivera, Dr. Carlos Ortiz-Ortiz, Dr. Priscilla Magno-Pagatzaurturidua, Dr. Javier Acevedo-Gonzalez, Dr. Luis Rodriguez-Ospina, Dr. Carlos M. Perez-Ruiz, Dr. Mariluz Rivera-Hernandez, Dr. Nicole M. Grigg, Dr. Jose Martin-Ortiz, Dr. Emanuel Warrington-Colon, Roberto Moura-Henriquez, R.N., Mitchell Colon, R.N., and Maria C. Carrion-Ramos, R.N.;

(c) failing to adequately supervise its agents, apparent agents, employees, servants, representatives, physicians, resident physicians, nurses and/or other health care providers, including, but not limited to Dr. Norma Santiago-Rivera, Dr. Carlos Ortiz-Ortiz, Dr. Priscilla Magno-Pagatzaurturidua, Dr. Javier Acevedo-Gonzalez, Dr. Luis Rodriguez-Ospina, Dr. Carlos M. Perez-Ruiz, Dr. Mariluz Rivera-Hernandez, Dr. Nicole M. Grigg, Dr. Jose Martin-Ortiz, Dr. Emanuel Warrington-Colon, Roberto Moura-Henriquez, R.N., Mitchell Colon, R.N., and Maria C. Carrion-Ramos, R.N.; and

(d) failing to adequately investigate, credential, and screen its agents, apparent agents, employees, servants, representatives, physicians, resident physicians, nurses and/or other health care providers providing care and treatment to Mr. Quinones-Martinez.

62. As a direct and proximate result of the United States' actions, inactions, errors, and omissions, by and through its agents, employees, servants, and representatives:

(a) Mr. Quinones-Martinez suffered bodily injury, resulting conscious pain and suffering, and ultimately he died;

(b) Josefa Quinones has and will suffer mental anguish, pain and suffering, a loss of consortium, a loss of companionship, protection, comfort, and society. She has and will continue to suffer a loss of her husband's support and services. These losses were suffered in the past, are ongoing, permanent, and she will suffer these losses in the future. Josefa Quinones has also suffered economic damages, which include, but are not limited to, the funeral expenses associated with Mr. Quinones-Martinez's funeral;

(c) Alexa Quinones has and will suffer mental anguish, pain and suffering, a loss of parental companionship, instruction, and guidance as a result of the death of her father. She has and will continue to suffer a loss of her father's support and services. These losses were suffered in the past, are ongoing, permanent, and she will suffer these losses in the future;

(d) Jessica Martinez has and will suffer mental anguish, pain and suffering, a loss of parental companionship, instruction, and guidance as a result of the death of her father. These losses were suffered in the past, are ongoing, permanent, and she will suffer these losses in the future;

(e) Juan Quinones has and will suffer mental anguish, pain and suffering, a loss of parental companionship, instruction, and guidance as a result of the death of his father. These losses were suffered in the past, are ongoing, permanent, and he will suffer these losses in the future; and

    (f)    The members of Mr. Quinones-Martinez's suscesión and Josefa Quinones have suffered a loss of net accumulations which would have been inherited had Mr. Quinones-Martinez lived.

WHEREFORE, Plaintiffs demand judgment against the United States for damages, plus interest and costs, and such other relief as this Court deems just and proper.

        Respectfully submitted,

        de la PARTE & GILBERT, P.A.

        /s/ Eric D. Nowak
        Richard A. Gilbert (FBN 180600) (Trial Counsel)
        Daniel J. McBreen (FBN 0580007)
        Eric D. Nowak (FBN 72271)
        101 E. Kennedy Blvd., Suite 2000
        P.O. Box 2350
        Tampa, FL  33601-2350
        Telephone:  (813) 229-2775
        Fax:  (813) 229-2712
        Attorneys for Plaintiffs
        Primary E-mail: rgilbert@dgfirm.com
        Primary E-mail: dmcbreen@dgfirm.com
        Primary E-mail: enowak@dgfirm.com
        Secondary E-mail: serviceclerk@dgfirm.com