UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSEFA QUINONES, JESSICA
MARTINEZ, JUAN QUINONES and
ALEXA QUINONES,

    Plaintiffs,

v.                                                                                          Case No: 8:14-cv-164-T-36MAP

USA,

    Defendant.
_____/

## **ORDER**

This cause comes before the Court upon the Defendant United States of America's Motion for Summary Judgment as to Applicability of 24 L.P.R.A. §§ 10031-43 (Doc. 23), and the Plaintiffs Josefa Quinones, Jessica Martinez, Juan Quinones, and Alexa Quinones' (collectively, "Plaintiffs") Cross-Motion for Partial Summary Judgment (Doc. 43). Each party responded in opposition to the other's motion (Docs. 47 and 48), and also replied in further support of their own motion (Docs. 53 and 54). On May 14, 2015, the Court held oral argument on the Motions. Doc. 67. The Court, having considered the parties' submissions and the oral argument, and being fully advised in the premises, will now GRANT Plaintiffs' Motion, in part, and DENY the United States' Motion.

**I.      BACKGROUND**[1]

This action arises from the death of Julio Quinones following the allegedly negligent treatment he received from his medical providers at the Veteran's Affairs Medical Center in San

---

[1] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, stipulated facts, affidavits, and deposition testimony.

Juan, Puerto Rico ("VAMC").  Plaintiffs filed a two count complaint on January 22, 2014 (Doc. 1).  Plaintiffs assert that the United States is vicariously liable under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-80 ("FTCA"), for the allegedly negligent conduct of Mr. Quinones-Martinez's medical providers, as well as for failing to adequately credential, train, and supervise those medical providers.  *See generally* Doc. 1 ("Compl.").  Defendant answered the complaint on April 4, 2014 and asserted eleven affirmative defenses (Doc. 8).  Trial is scheduled for the term commencing July 6, 2015.

Plaintiffs and the United States now both move for partial summary judgment.  Specifically, the United States argues that it is entitled to the statutory damages cap provided by 24 L.P.R.A. § 10035.  Plaintiffs argue that, to the contrary, the United States is not entitled to such a defense because it has waived any entitlement it might have to the damages cap.  Additionally, Plaintiffs argue that 24 L.P.R.A. § 10035 does not apply in this case.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact.  *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004).  That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case."  *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323.

**III.   DISCUSSION**

At issue in the parties' motions is whether a statutory damages cap that directly applies to a specific type of medical treatment facility defined under Puerto Rico law also applies here. This issue arises because "[t]he FTCA is a limited waiver of sovereign immunity," *Auger v. United States*, 382 Fed. App'x 901, 902 (11th Cir. 2010), and exposes the United States to liability only "in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674. Accordingly, for the purpose of measuring the United States' liability under the FTCA, a court looks to the extent liability would be imposed on the most analogous private individual or entity. *See Maradiaga v. United States*, 679 F.3d 1286, 1293 (11th Cir. 2012) (citation omitted).

The United States argues that the VAMC is most closely analogous to a Regional Academic Medical Center ("RAMC"), which is defined under Puerto Rico law as "[a] group of one (1) or more hospitals, health facilities, medical groups and health professionals education and training programs related to an accredited School of Medicine whose mission is to educate, conduct research and provide health services." 24 L.P.R.A. § 10031(b). 24 L.P.R.A. § 10035 imposes a cap on medical malpractice liability for "[RAMCs], the students, physicians in

3

postgraduate training and the faculty members thereof, for the medical procedures practiced in said Centers in the exercise of their teaching duties."[2] Thus, according to the United States, it is entitled to the statutory cap for damages provided by 24 L.P.R.A. § 10035.

In turn, Plaintiffs challenge the applicability of 24 L.P.R.A § 10035. *First*, Plaintiffs contend that the United States failed to properly raise this issue, thus waiving it. *Second*, Plaintiffs assert that the VAMC is not most reasonably analogous to a RAMC, but rather is most reasonably analogous to a private hospital. *Finally*, Plaintiffs argue that there is a genuine dispute of material fact whether Mr. Quinones' medical providers were exercising their teaching duties during the course of his treatment.

The Court here addresses only the issue of waiver. Specifically, Plaintiffs contend that the United States waived any entitlement to the damages cap under 24 L.P.R.A. § 10035 because it failed to timely raise this affirmative defense and permitting the United States to raise it at this stage would greatly prejudice them. In response, the United States argues that a damages cap is not an affirmative defense and that, in any case, there would be no prejudice to Plaintiffs because the factual issues central to the applicability of 24 L.P.R.A. § 10035 were addressed extensively in discovery.

After careful consideration, the Court agrees with Plaintiffs that the United States has waived any right it may have had to raise this affirmative defense. *First*, the Court finds that the damages cap of 24 L.P.R.A. § 10035 is an affirmative defense that must be raised by the party asserting it. The United States notes that there is no binding case law that a damages cap is an affirmative defense, and that a damages cap is not explicitly listed as an affirmative defense under

---

[2] That cap is "a maximum of $75,000 for damages suffered by a person and up to $150,000 when the damages were suffered by more than one person or when there are several causes [of] action to which a single injured party is entitled." 24 L.P.R.A. § 10035.

Federal Rule of Civil Procedure 8(c).  As an initial matter, however, even assuming *arguendo* that there is no Eleventh Circuit law holding that a damages cap *is* an affirmative defense, neither has the United States referenced any Eleventh Circuit law to the contrary.[3]

In the absence of binding case law, the Court finds the Fifth Circuit's opinion and reasoning in *Ingraham v. United States*, 808 F.2d 1075 (5th Cir. 1987), to be persuasive.  In *Ingraham*, the Fifth Circuit held that the statutory limitation on liability provided by Tex. Rev. Civ. Stat. Ann. art. 4590i is an affirmative defense that is waived if not timely raised.  *See id.* at 1078.  In so holding, the Fifth Circuit found that such a defense constituted an "avoidance" and thus fell within the residuary clause of Rule 8(c), which stated (per the version of the rule in effect at the time) that an affirmative defense includes "any other matter constituting any avoidance or affirmative defense."  *See id.* at 1078-79.  The Fifth Circuit further noted that, because this defense could not be decided purely as a matter of law, requiring a defendant to timely raise it would prevent unfair surprise to the plaintiff.  *See id.* at 1079 ("A defendant should not be permitted to 'lie behind a log' and ambush a plaintiff with an unexpected defense . . . . The instant cases illustrate this consideration."); *see also Jakobsen v. Mass. Port Auth.*, 520 F.2d 810, 813 (1st Cir. 1975).

The same reasoning applies here.  To begin with, although the current version of Rule 8(c) is drafted in a slightly different manner, it still covers essentially the same scope—that "a party must affirmatively state *any avoidance* or affirmative defense," including—*but not limited to*—a list of 18 specific affirmative defenses.  Fed. R. Civ. P. 8(c) (2010) (emphasis added).  Further, like the statutory provision at issue in *Ingraham*, the applicability of 24 L.P.R.A. § 10035 turns on a number of important factual determinations.  Finally, such a cap is not directly relevant to

---

[3] Indeed, neither party cites the Court to any Eleventh Circuit law that is on point and the Court is not independently aware of any.

Plaintiffs' prima facie case, and Plaintiffs would very likely be unfairly surprised if the defense did not appear in the pleadings. *See Hassan v. United States Postal Serv.*, 842 F.2d 260, 263 (11th Cir. 1988). The Court therefore concludes that, to invoke the damages cap of 24 L.P.R.A. § 10035, it must be properly raised as an affirmative defense. *Accord Camacho v. San Juan Bautista Med. Center, Inc.*, Case No. 10-cv-1857, 2013 WL 653946, at *3 (D.P.R. Feb. 21, 2013).

*Second*, the Court finds that the United States failed to properly raise this defense in its pleadings. The United States baldly asserts, in one sentence, that it did in fact adequately assert this affirmative defense. *See* Doc. 48 at 14 (stating simply that "[t]he United States amply complied with Rule 8(c) by asserting an affirmative defense of entitlement to limitations on liability under Puerto Rico law," and referencing only its Answer and Affirmative Defenses). As Plaintiffs note, however, the only indications in the United States' Answer and Affirmative Defenses that would even suggest that the United States ever intended to assert this defense are its Fifth and Eleventh Affirmative Defenses, which allege in a vague and unspecified manner that "Plaintiffs' recovery, if any, is subject to and limited to the applicable provisions of Puerto Rico law to the extent that these provisions are not inconsistent with federal law or the [FTCA]"; and "Defendant is protected by . . . affirmative defenses[] as would be available to a private person under like circumstances under applicable state law." *See* Doc. 8 at 9-10, 11.

Critically, not only did the United States fail to specifically invoke 24 L.P.R.A. § 10035, it also failed to allege any other facts that would suggest that it intended to invoke 24 L.P.R.A. § 10035, such as whether the VAMC had any affiliations with any accredited medical schools. *See* Doc. 8 (Answer and Affirmative Defenses). Under these circumstances, it is clear that the United States has failed to adequately plead this affirmative defense. *See Microsoft Corp. v. Jesse's Computers & Repair, Inc.*, 211 F.R.D. 681, 684 (M.D. Fla. 2002) (a party raising an affirmative

defense "must do more than make conclusory allegations"); *Voter Verified, Inc. v. Premier Election Solutions, Inc.*, Case No. 09-cv-1968, 2010 WL 2243727, at *1 (M.D. Fla. June 4, 2010) ("An affirmative defense may [] be insufficient as a matter of law if it fails to meet the general pleading requirements of Federal Rule of Civil Procedure 8.") (quotation marks and citation omitted); *accord Morrison v. Executive Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1318-19 (S.D. Fla. 2005) (finding an affirmative defense of exemption under the Fair Labor Standards Act ("FLSA") insufficiently pleaded where the defendants failed to identify the specific FLSA exemptions that they claim applied); *Premium Leisure, LLC v. Gulf Coast Spa Manuf., Inc.*, Case No. 08-cv-1048, 2008 WL 3927265, at *4 (M.D. Fla. Aug. 21, 2008) (finding four affirmative defenses insufficiently pleaded because they "consist[ed] merely of one sentence assertions with no factual support").

*Finally*, the Court finds that the United States' failure to plead this defense, coupled with its conduct during discovery, resulted in severe, unfair prejudice to Plaintiffs that cannot be cured without causing additional unfair prejudice. To begin with, the Court questions whether the United States' discovery tactics were designed to thwart Plaintiffs' efforts to flesh out the nature of its affirmative defenses, including the now-asserted damages cap under 24 L.P.R.A. § 10035. As Plaintiffs note, the United States' Rule 26(a) disclosures[4] fail to identify any witnesses who would have information critical to establishing the applicability of 24 L.P.R.A. § 10035, such as witnesses who would have information regarding the VAMC's affiliations, if any, with accredited medical

---

[4] Federal Rule of Civil Procedure 26(a) requires a party to disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses," as well as "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses . . . ."

schools. *See* Doc. 43-4. Similarly, none of the documents identified by the United States in its Rule 26(a) disclosures as those it may use "in support of its defenses" would establish the applicability of 24 L.P.R.A. § 10035. *See id.* Further, like its responsive pleading, the United States' response to Plaintiffs' interrogatory seeking "the facts upon which [the United States] rel[ies] for each affirmative defense" consists only of vague and conclusory statements of law that fail to put Plaintiffs on fair notice of any specific affirmative defense. *See* Doc. 43-5 at 6 (stating only that "Defendant's . . . Fifth Affirmative Defense[] [is] based on the fact that Puerto Rico medical malpractice law applies to Plaintiffs' claims in this case, and therefore Defendant is entitled to rely on any provisions of Puerto Rico law that govern damages in medical malpractice cases," and "Defendant's . . . Eleventh Affirmative Defense[] [is] based on provisions in the Federal Tort Claims Act."). Finally, the United States' response to Plaintiffs' request for documents "that relate to [the United States'] affirmative defenses" states only that the United States would produce "a complete set of Mr. Quinones' Medical Records from the San Juan VAMC"—thus implying that documents, such as affiliation agreements, that would establish the applicability of 24 L.P.R.A. § 10035 *would not be responsive* and that the United States did not in fact intend to rely on such a defense. *See* Doc. 43-6 at 2. No affiliation agreement between the VAMC and a University was ever produced in discovery.

The United States argues that Plaintiffs nevertheless were not prejudiced by its deficient discovery responses because it notified them prior to filing its summary judgment motion that it intended to assert this defense and because the factual issues central to resolving the legal question of whether 24 L.P.R.A. § 10035 applies were addressed extensively in discovery. Neither argument is persuasive.

As to the United States' first point, it is immaterial that the United States notified Plaintiffs at some time prior to the filing of its summary judgment motion that it planned to raise this affirmative defense. Rather, what is relevant is that the United States notified Plaintiffs of its intentions only *after* the discovery deadline had already passed. *See* Doc. 43-7. Indeed, at no time prior to the close of discovery did the United States ever indicate that it intended to rely on this defense, such as by seeking to amend its pleadings. To date, the United States has not moved to amend its answer and affirmative defenses. Further, even after belatedly notifying Plaintiffs of its intent to rely on this defense, the United States did not supplement its discovery responses. The United States' purported notice regarding its intent to rely on 24 L.P.R.A. § 10035 therefore fails to mitigate any prejudice Plaintiffs may have suffered, because by the time the United States gave such notice, Plaintiffs were barred by the Scheduling Order from conducting discovery regarding the defense.

As to the United States' second point, it is clear that, contrary to the United States' assertions, Plaintiffs have been prejudiced by the United States' failure to timely inform them of its intent to rely on 24 L.P.R.A. § 10035. The United States notes that each of the physicians who treated Mr. Quinones provided extensive testimony about the VAMC's training activities, including his or her educational and teaching activities, *see* Doc. 48 at 16; *see also* Doc. 23 at 5-8, and that it produced certain documents that describe the VAMC's resident training program and that characterize the VAMC as an academic/teaching institution, *see* Doc. 48 at 17-18. However, even accepting the United States' assertions to be true, there still remain glaring evidentiary gaps that significantly impede Plaintiffs' ability to contest the applicability of the damages cap, such as deposition testimony from a knowledgeable witness regarding the predicate question of whether the VAMC, as a whole, is "most closely analogous" to a RAMC.

Most egregiously, the United States is now apparently attempting to rely upon affiliation agreements between the VAMC and Puerto Rico medical schools that were never produced in discovery, but that undisputedly would have been responsive to Plaintiffs' request for production had the applicability of 24 L.P.R.A. § 10035 been at issue. *See* Doc. 23-2. Not only were Plaintiffs denied the opportunity to question any witnesses regarding these (and potentially other relevant but unproduced) documents, the United States never specified that any of the witnesses it disclosed would have knowledge regarding affiliation agreements or that it even intended to rely upon such documents "in support of its defenses." The United States' attempt to downplay its failure to produce these documents by claiming that the affiliation agreements "simply confirm information readily available from [publicly available] sources," Doc. 48 at 18 n.21, is not well taken. Rather, if, as it contends, the United States has asserted the cap on liability, it is clear that the United States has improperly withheld documents and failed to make adequate disclosures, preventing Plaintiffs from fully and fairly litigating its now-asserted affirmative defense.

The United States does not suggest any way to cure this unfair prejudice without causing additional unfair prejudice. It would be manifestly unfair to remedy the prejudice created by the United States' own doing, for example, by delaying trial, reopening discovery to give the United States another opportunity to produce documents that it should have already produced, and requiring Plaintiffs to incur additional (and very likely, significant) costs to depose (or re-depose) any number of witnesses who the United States previously failed to identify as having knowledge relevant to its belatedly-asserted affirmative defense. The Court notes that Plaintiffs deposed every witness (27) listed in the United States' Rule 26(a) disclosures. Plaintiffs contend that if the United States had properly asserted the affirmative defense in 24 L.P.R.A. §10035 they would have developed facts during discovery to avoid the statutory protection of this section.

The United States cites a number of cases in which courts have permitted a defendant to proceed upon an untimely-raised affirmative defense. Those cases, however, dealt with situations where the plaintiff was not prejudiced by the untimely assertion of the defense. *See, e.g.*, *Hassan*, 842 F.2d at 263-64 (holding that the district court did not improperly consider evidence regarding collateral source payments even though the defendant failed to include that affirmative defense in its pleadings, because "it is clear that there was no prejudice to [the plaintiff]"); *Grant v. Preferred Research, Inc.*, 885 F.2d 795, 797-98 (11th Cir. 1989) (rejecting the plaintiff's argument that the defendant waived a statute of limitations defense by failing to plead it, on the ground that the plaintiff "was fully aware that [the defendant] intended to rely on a statute of limitations defense" and "[did] not assert any prejudice from the lateness of the pleading").

Such a situation is not presently before the Court. Rather, Plaintiffs have suffered significant and incurable unfair prejudice as a result of the United States' belated assertion of this affirmative defense. The Court, therefore, declines to disturb the default rule that "[f]ailure to plead an affirmative defense generally results in a waiver of that defense," *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1239 (11th Cir. 2010), and, accordingly, holds that the United States has waived this affirmative defense. *Accord, e.g.*, *Keybank Nat'l Ass'n v. Hamrick*, 576 Fed. App'x . 884, 888 (11th Cir. 2014) (holding that the defendants waived the affirmative defense of notice by "failing to assert their notice argument in any of their three answers"); *Diaz v. Jaguar Restaurant Grp., LLC*, 627 F.3d 1212, 1214-15 (11th Cir. 2010) (holding that the defendant waived the affirmative defense of an administrative exemption under the FLSA by "failing to plead the defense in its Answer and by failing to move to amend its Answer before trial"); *United States ex rel. Ragghianti Foundations III, LLC v. Peter R. Brown Constr., Inc.*, 49 F. Supp. 3d 1031, 1042-43 (M.D. Fla. 2014) (holding that the defendant waived the affirmative defense of release because

it was not raised in the responsive pleadings and the plaintiff "demonstrated sufficient prejudice in its ability to adequately defend against [the defendant's] affirmative defense of release, due to [the defendant's] failure to raise the affirmative defense in a timely manner"); *Britt Green Trucking, Inc. v. FedEx Nat'l, LTL, Inc.*, Case No. 09-cv-445, 2014 WL 3417569, at *12-13 (M.D. Fla. July 14, 2014) (holding that the defendant waived the affirmative defense of preemption when the defense was raised for the first time at summary judgment, because "[the defendant] could have raised this affirmative defense at any time prior to summary judgment," but instead "waited until the eleventh hour to bring this issue to the attention of Plaintiffs and this Court.").

## IV. CONCLUSION

The Federal Rules of Civil Procedure are designed to avoid the situation that arises here — namely, litigation by ambush. *See Diaz,* 627 F.3d at 1214. Indeed, had the United States adhered to the Rules' requirements, this case may have been resolved long before reaching this stage. With regard to its affirmative defense of a damages cap under 24 L.P.R.A. § 10035, however, the United States failed to abide by those rules, causing Plaintiffs to suffer incurable, unfair prejudice. Accordingly, the Court concludes that the United States has waived any right it may have had to raise this defense.[5] The United States' Motion for Summary Judgment, which is premised on the application of 24 L.P.R.A. § 10035, must also be denied, as the United States did not assert this affirmative defense in its answer and affirmative defenses.

It is hereby **ORDERED AND ADJUDGED**:

1. Plaintiffs' Cross-Motion for Partial Summary Judgment (Doc. 43) is **GRANTED, in part**; and

---

[5] Having concluded that the United States has waived any right it may have had to a damages cap under 24 L.P.R.A. §10035, the Court need not address whether this section applies in this case.

2. The United States is not permitted to raise or rely upon the affirmative defense of a damages cap under 24 L.P.R.A. § 10035.

3. The United States' Motion for Summary Judgment as to Applicability of 24 L.P.R.A. §§ 10031-43 (Doc. 23) is **DENIED**.

**DONE AND ORDERED** in Tampa, Florida on June 29, 2015.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any